*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CARI ANN HAMILTON,

   *Plaintiff-Appellant,*

   *v.*

STARCOM MEDIAVEST GROUP, INC. and LEO
BURNETT USA, INC.,

   *Defendants-Appellees.*

No. 07-1208

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-74493—Nancy G. Edmunds, District Judge.

Argued: February 5, 2008

Decided and Filed: April 11, 2008

Before: MARTIN and SUTTON, Circuit Judges; OBERDORFER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Lawrence J. Breskin, LAW OFFICES, Detroit, Michigan, for Appellant. Peter R. Bulmer, JACKSON LEWIS LLP, Chicago, Illinois, for Appellees. **ON BRIEF:** Lawrence J. Breskin, LAW OFFICES, Detroit, Michigan, for Appellant. Peter R. Bulmer, JACKSON LEWIS LLP, Chicago, Illinois, for Appellees.

_____

## OPINION

_____

  BOYCE F. MARTIN, JR., Circuit Judge. Cari Ann Hamilton brought suit against Starcom Mediavest Group, Inc., and Leo Burnett USA, Inc., alleging that they violated ERISA § 510, 29 U.S.C. § 1140 (2005), by terminating her employment in retaliation for exercising her right to claim disability benefits. The district court granted summary judgment to the defendants, concluding that (1) Hamilton failed to establish a prima facie case of retaliation, and alternatively, (2) she failed to make the required showing that defendants' proffered reason for firing her — the reorganization and hiring of candidates with greater experience — was a pretext to retaliate against her. She now appeals the district court's grant of summary judgment in favor of defendants. We agree with the

_____

[*]The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

district court's second, alternative, finding and hold that Hamilton has failed to establish that defendants' proffered reason for firing her was mere pretext, and accordingly AFFIRM the district court's grant of summary judgment.

## I.

From January 2000 until October 21, 2005, Plaintiff Cari Ann Hamilton worked at General Motors Planworks ("GM Planworks"), which provided advertising services solely to the General Motors Corporation. The advertising services involved creating, managing, and executing media plans to promote GM. An unrelated third party, General Motors Mediaworks ("Mediaworks"), was responsible for buying the media.

GM Planworks is a division of defendant Starcom Mediavest Group, Inc., which is a subsidiary of Defendant Leo Burnett USA, Inc. Leo Burnett USA, Inc., in turn, is a wholly-owned subsidiary of Publicis Groupe SA.

Hamilton began working at GM Planworks in 2000 as an administrative assistant in Detroit, Michigan. In 2004, she began suffering from fibrocystic breast disease, and on July 29, 2004, she took a medical leave of absence. She applied for short-term disability benefits under the Publicis Groupe Short Term Disability Plan.

On August 26, 2004, Hamilton's application for benefits was denied. Hamilton contacted the Human Resources office in Detroit to assist with obtaining her benefits, and this led to some "negative interactions." Victoria Kruslemsky, the Detroit Human Resources director, advised Hamilton to seek assistance from the company's Chicago personnel because they handled administration of benefits.

On November 18, 2004, Hamilton's medical leave ended. While Hamilton had been out on leave, a temporary employee who filled in for Hamilton was given her administrative-assistant position. Upon her return from leave, Hamilton accepted a Broadcast Coordinator position in the GM Planworks Broadcast Group, changing her work location from Detroit to Troy, Michigan. During this transition, Kruslemsky instructed a senior member of the management team to counsel Hamilton to encourage her "to view the change of locations as an opportunity to put any hard feelings she had against Detroit personnel aside and move forward positively in a position that allowed her to learn new skills." As a Broadcast Coordinator, Hamilton reviewed whether advertisements and other media that General Motors Mediaworks ordered from broadcast vendors was aired as ordered; if not, she was to determine how to resolve the discrepancies.

On December 23, 2004, Hamilton filed an ERISA lawsuit ("the Benefits Suit") against the Publicis Groupe Short Term Disability Plan seeking the benefits she was denied.

In May 2005, GM announced that it would start using GM Planworks, instead of Mediaworks, for its media buying. An article from Starcom Mediavest Group's website described this change, which involved a $3.2 billion account, as "the biggest account switch in the history of advertising." The target date for this change was October 2005, and it contributed to an increase in the number of GM Planworks employees from roughly 300 to 500 people. GM Planworks significantly reorganized its operations and determined that its broadcast media buyers should be located in New York City, the center of the national broadcast industry. Additionally, GM Planworks determined that the buyers should take on the responsibilities of the Broadcast Coordinators, such as resolving discrepancies in media orders. Accordingly, Broadcast Coordinators, including Hamilton, were to have their positions eliminated. Hamilton learned this in July 2005.

GM Planworks took steps to provide replacement employment for Hamilton and the other Broadcast Coordinators whose positions were eliminated. On September 1, 2005, Kruslemsky sent

an e-mail to the Broadcast Coordinators to clarify issues relating to the reorganization. GM Planworks added a number of media-buying positions during the reorganization, but Hamilton did not have media-buying experience. The e-mail explained that persons who did not find replacement employment with GM Planworks would be terminated and would be eligible for severance and unemployment compensation. In September 2005, Hamilton interviewed for three positions at the reorganized GM Planworks.

First, she interviewed with Jeff Hughes for an Assistant Buyer position. The Assistant Buyer was to provide assistance to media buyers and planners in Detroit and New York. A knowledge of computer systems used for planning media was an important aspect of the position. Hamilton was one of ten candidates interviewed. Hughes selected another candidate for the position because the candidate had experience working in the internet/digital group and had superior experience and knowledge of the requisite computer systems. At that time, Hughes did not know that Hamilton had brought her Benefits Suit against GM Planworks or its related entities.

Second, Hamilton interviewed with Lisa Stearn for one of five open Print Coordinator positions. The Print Coordinators were to ensure that print-media vendors were paid for General Motors' advertisements and to resolve discrepancies between the advertising ordered and the advertising delivered. Stearn, along with two colleagues, also interviewed other Broadcast Coordinators from the Troy office for the positions. Stearn selected five other candidates for offers because each had performed coordinator-type functions for at least four years; Hamilton, by contrast, had been in the Broadcast Coordinator Position for only one year. Stearn relayed her choices to her Managing Director, Mark Rowlands, who approved offering each of these individuals the position. One candidate decided not to accept the offer. Stearn then interviewed another candidate who also had multiple years of experience in a coordinator position. Upon Stearn's recommendation, Rowlands approved an offer to this new candidate. Stearn's affidavit does not mention whether or not she was aware of Hamilton's Benefits Suit.

Third, Hamilton interviewed with Kelly Malin for an Interactive Billing Coordinator position. The person in this position was to coordinate billing and resolve discrepancies for digital media. Malin selected another candidate for the position because of the candidate's specific experience with coordinating digital media and her experience as a supervisor for GM Planworks. At that time, Malin did not know that Hamilton had brought the Benefits Suit against GM Planworks or its related entities.

Hamilton's employment ended on or about October 21, 2005. She was the only employee in the Broadcast Coordination department who desired, but was not offered, a reassignment. She ultimately prevailed in her Benefits Suit on September 26, 2006.

On November 28, 2005, Hamilton filed a one-count complaint against the defendants, alleging that they violated ERISA § 510, 29 U.S.C. § 1140 (2005), by terminating her in retaliation for exercising her right to claim disability benefits. The district court granted summary judgment to the defendants, concluding that (1) Hamilton failed to establish a prima facie case of retaliation, and, alternatively, (2) she failed make the required showing that Defendants' proffered reason for firing her — the reorganization and hiring of candidates with greater experience — was a pretext masking their retaliation against her. Hamilton now appeals.

## II.

### A.  Standard of Review

The Sixth Circuit reviews de novo a district court's grant of summary judgment. *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 650 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c).  In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## B.  Hamilton's Retaliation Claim

Under ERISA § 510, it is "unlawful for any person to discharge . . . or discriminate against a participant or beneficiary for [1] exercising any right to which he [or she] is entitled under the provisions of an employee benefit plan . . . or for [2] the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140. Thus, the Sixth Circuit recognizes two types of claims under this section: (1) an "exercise" or "retaliation" claim, such as the present suit, where "'adverse action is taken because a participant availed [her]self of an ERISA right'; and (2) an 'interference' claim where adverse action is taken as 'interference with the attainment of a right under ERISA.'" *Dunn v. Elco Enters.*, No. 05-71801, 2006 U.S. Dist. LEXIS 26169, at *8 (E.D. Mich. May 4, 2006) (citing *Mattei v. Mattei*, 126 F.3d 794, 797 n.4 (6th Cir. 1997)).  Though the "interference" cases provide much of the relevant law in our Circuit, we look to recent *retaliation* cases in the district courts that have applied Sixth Circuit precedent for the specific parameters of Hamilton's claim.  *See Urbano-Spencer v. Starfish Family Servs., Inc.*, No. 05-73064, 2006 U.S. Dist. LEXIS 45316 (E.D. Mich. July 5, 2006); *Dunn*, 2006 U.S. Dist. LEXIS 26169.

To state a claim under § 510, Hamilton must show that Defendants had a specific intent to violate ERISA.  *Schweitzer v. Teamsters Local 100*, 413 F.3d 533, 537 (6th Cir. 2005).  Where, as here, there is no direct evidence of the employer's motivation, we apply the familiar *Burdine* burden-shifting approach:  First, Hamilton must establish a prima facie case of retaliation; if she does, the burden shifts to Defendants to articulate a legitimate reason for her termination; finally, Hamilton must show that the articulated reason was a pretext for retaliation. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992); *see generally Texas Dep't of Comm'y Affairs v. Burdine*, 450 U.S. 248 (1981).

To establish a prima facie case of retaliation under § 510, an employee must show that (1) she was engaged in activity that ERISA protects; (2) she suffered an adverse employment action; and (3) a causal link exists between her protected activity and the employer's adverse action.  *Dunn*, 2006 U.S. Dist. LEXIS 26169, at *9 (ERISA retaliation) (citing *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986) (Title-VII retaliation)); *Urbano-Spencer*, 2006 U.S. Dist. LEXIS 45316, at *11. The first two requirements are not at issue: Defendants do not contest that (1) Hamilton's efforts, including her Benefits Suit, to seek disability benefits, were protected activities; and (2) her termination was an adverse employment action.  The question is whether a causal link exists between the two.  Because we believe that Hamilton has shown a prima facie case of causation, we analyze this issue under the third step of the *Burdine* burden-shifting approach — whether Hamilton has shown the defendants' proffered reasons for firing her were mere pretext for retaliation against her for bringing her Benefits Suit.

As an initial matter, of course, an employee's protected activities will be the cause of an employer's retaliatory conduct only where the employer knew of those protected activities. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 n.3 (6th Cir. 1999) (en banc) (noting that defendant's knowledge of plaintiff's conduct is "captured by the third prong [of the prima facie retaliation case]: the defendant must have known about the protected activity in order for it to have motivated the adverse action.").  Though this specific point regarding defendants' knowledge of Hamilton's Benefits suit was not litigated extensively in the district court (nor relied on by the district court in its decision), defendants have argued on appeal that Hamilton has failed to show the requisite

knowledge. Hamilton responds that because defendants did not rely on this argument in their motion for summary judgment below, they waived it. We find it unnecessary to decide this issue because we agree with the district court that Hamilton failed to show sufficient evidence of causation to get past summary judgment.

In finding that Hamilton established a prima facie case, we first address her argument that the proximity in time between her benefits suit and her dismissal is evidence of causation. Hamilton filed her Benefits Suit on December 23, 2004. Her position was terminated on October 21, 2005, but she could colorably contend that the first adverse action against her was defendants' failure to offer her a new position in September 2005. Thus, assuming the facts in the light most favorable to her, she suffered an adverse employment action (her first rejection) approximately nine months after filing her suit.

"'Although no one factor is dispositive in establishing a causal connection, evidence that the adverse action was taken shortly after a plaintiff's exercise of protected rights is relevant to causation.'" *Dunn*, 2006 U.S. Dist. LEXIS 26169, at *14–15 (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Indeed, some cases suggest that proximity alone — if covering a short time span — may suffice to show causation.[1] Sixth Circuit law on this particular point is far from uniform, however, with other cases suggesting proximity alone may never be enough to show causation.[2]

Regardless of the tension in Sixth Circuit law on whether proximity alone may *ever* suffice to show causation, there is a consensus that proximity alone generally will not suffice where the adverse action occurs more than a few months — let alone nine months — after the protected conduct. *See Nguyen*, 229 F.2d at 567 (approving unpublished decision's statement that "previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months").[3]

Considering the nine-month period at issue here, Hamilton would have to provide additional evidence of causation to withstand summary judgment for failing to establish even a prima facie case. *Cf. Dunn*, 2006 U.S. Dist. LEXIS 26169, at *19, 23 (suit survives where defendant employer testified that he "was upset with [the p]laintiff for blowing the whistle on his ERISA violations" and fired the plaintiff "less than [four] months" later). Hamilton contends that four additional conditions present

---

[1] *DiCarlo v. Potter*, 358 F.3d 408, 421–22 (6th Cir. 2004) (holding that 21-day period showed causation); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (noting that proximity may be "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive"); *Nguyen*, 229 F.3d at 567 ("[T]here may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference" of a causal link.); *see also Humphreys*, 966 F.2d at 1044 (noting, in ERISA interference case, that plaintiff showed causation where benefits were to vest two months after firing, though this was the "bare minimum that a plaintiff must show to meet the prima facie case threshold . . .").

[2] *See Dunn*, 2006 U.S. Dist. LEXIS 26169, at *15 ("'[P]roximity alone may not survive summary judgment . . . nor does it necessarily imply causation.'") (quoting *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir. 2002)); *Urbano-Spencer*, 2006 U.S. Dist. LEXIS 45316, at *14 (noting that *Nguyen* Court's statement that proximity alone may suffice is dictum); *Light v. Mapco Petroleum, Inc.*, 2005 U.S. Dist. LEXIS 45756, at (M.D. Tenn. Aug. 4, 2005) (stating that *DiCarlo*'s "holding does stand in contrast to the Sixth Circuit's prior decisions, including in *Nguyen*, where the court appeared to underscore the fact that it previously had rejected the idea that temporal proximity alone is enough to establish causation.").

[3] *See also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) ("Absent additional evidence, this loose temporal proximity" of "disciplinary actions occur[ing] two to five months after Hafford filed charges" is "insufficient to create a triable issue."); *Cooper v. City of N. Olmstead*, 795 F.2d 1295, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference [sic] of retaliation.").

here show a causal link — she was the only Broadcast Coordinator terminated, she was terminated during a period of time when defendants were hiring a large number of employees, she was not considered for several administrative assistant positions, and the human resources department vetted all of her applications for other positions despite the fact that they had animosity towards her because of her Benefits Suit. We address each of these arguments in turn and find that, while taken together they establish a prima facie case of retaliation, none of her contentions overcome the defendants' proffered legitimate reasons for her termination.

First and foremost, Hamilton contends that she makes a "core showing" of causation because Defendants terminated only her, and not any other Broadcast Coordinators, even though she was performing her job in a satisfactory manner. But there were only a finite number of positions available for Broadcast Coordinators, and Defendants fairly determined that candidates with more experience than she had were more qualified for the positions. For example, Hughes selected another candidate as Assistant Buyer who had more experience working in internet/digital group and with computer systems, and Stearn selected other candidates as Print Coordinators because they all had multiple years experience in similar positions whereas Hamilton had only one year of similar experience. Malin also selected another candidate for Interactive Billing Coordinator who had more experience coordinating digital media.

Second, Hamilton notes that she "was terminated at a time when GM Planworks was hiring large numbers of new employees." But she acknowledges that, at the same time, all Broadcast Coordinator positions, such as hers, were eliminated — she was not singled out.

Third, Hamilton contends that she was not considered for available administrative-assistant positions. But Hamilton never applied for these positions. Had she done so, she would have a stronger argument.

Fourth, Hamilton contends that her "vigorous pursuit of short-term disability benefits caused hard feelings with the human resources department" and that, during and after the reorganization, "every job opening and job interview [were] filtered through Human Resources." But she raises little evidence of these purported "hard feelings" other than the "negative interactions" Kruslemsky described occurring before Hamilton filed her Benefits Suit. Additionally, there is no evidence that any hard feelings continued, let alone manifested in adverse action, nine months later when she was ultimately terminated.

In sum, Hamilton fails to rebut any of defendants' proffered legitimate reasons for her termination with sufficient evidence that those reasons were mere pretext for terminating her in retaliation for bringing her Benefits Suit. Thus, her claims cannot survive summary judgment.

## III.

Because we find that Hamilton provided insufficient evidence of causation and thus failed to rebut defendants legitimate reasons for terminating her, we **AFFIRM** the district court's grant of summary judgment to Defendants.