JULIA SMITH GIBBONS, Circuit Judge.
Petitioner Lauren Palmer appeals a district court order granting summary judgment to respondents Rebecca Cacioppo, Kathy Hooper, and the Akron Board of Education (the “Board”). She contends that the district court erred in granting summary judgment on the following claims: (1) denial of her right to medical leave under the Family and Medical Leave Act (“FMLA”), 29 U.S.C. § 2601 et seq.; *493 (2) unreasonable search and seizure in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983; and (3) quid pro quo sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et séq. For the reasons that follow, we affirm the district court.
I.
Petitioner Lauren Palmer is a former employee of the Board, where she worked for thirteen years, primarily as a secretary at Glover Elementary School (“Glover”), until her termination on December 12, 2006. Respondents Cacioppo and Hooper were likewise employed by the public school system, with Cacioppo serving as Glover’s principal and Hooper working as the coordinator of support staff for the Board. Palmer reported to Glover in mid-August 2006, approximately two weeks before the start of the school year, when she and Cacioppo were the only employees required to be on the school premises. The events giving rise to this litigation stem, in part, from Palmer’s interactions with Cacioppo in the weeks before school began.
On one occasion during this time period, Cacioppo invited Palmer to join her at Strickland’s, a local ice cream shop. Although the ensuing circumstances are disputed by the parties, Palmer claims that Cacioppo requested that they sit in a secluded area and made sexual advances towards Palmer, including licking an ice cream cone in a sexually explicit manner and suggesting that they engage in sexual acts. After rejecting Cacioppo’s advances, Palmer alleges that she was repeatedly harassed by Cacioppo, who denigrated her work performance in emails to other people, including Hooper, and prevented her from timely completing kindergarten student enrollment. Palmer did not file an official complaint with the Akron School District concerning the alleged sexual harassment by Cacioppo, nor did she immediately report the incident to anyone. Palmer estimates, however, that she later informed several people of the harassment sometime in September, including her general practitioner, Dr. Ann DiFrangia; her attorney; her union representative; and Dr. Connie Hathorn, the Executive Director of Human Resources for Akron Public Schools. Neither Palmer nor Hat-horn pursued the matter.[1]
Shortly thereafter, Palmer missed numerous days of work; she was absent from September 1 to November 10, 2006. The parties contest whether some of these absences were authorized, in particular Palmer’s trip to Jamaica from September 5-8. When Palmer failed to report to work on September 5, Cacioppo sought the assistance of Sharon Null, who also worked as a secretary for the public schools, to aid with student enrollment at Glover. Null reported to Hooper that “no one ha[d] been enrolled” in Glover’s enrollment system and that “attendance ha[d] not been entered thus far this school year,” apparently implying that Palmer had neglected her job duties.
Though the exact dates are not clear from the record, the respondents learned at some time around the start of the school *494 year that Palmer had pled guilty in municipal court on August 9, 2006, to misdemeanor possession of marijuana and, in addition to being subject to a fine and a suspended driver’s license, was required to write an essay concerning the dangers of marijuana. The respondents further learned that a bench warrant had issued for Palmer on August 26, 2006, for failure to timely complete the essay; this warrant was later recalled when Palmer submitted her essay within an extended deadline of September 11, 2006. Hooper contends that, sometime between August 26 and September 11, Palmer falsely told both Hooper and Hathorn that she had satisfied her sentence when, in fact, she had not.
On September 22, 2006, the Board held a due process hearing, as required by Cleveland Board of Education v. Louder-mill, to address Palmer’s continued absence from work, her unapproved absences on September 5-8, the misdemeanor drug conviction, and Palmer’s related misrepresentations to Hooper and Hathorn concerning the satisfaction of her sentence. 470 U.S. 582, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (providing public employees a constitutional right to pre-termination due process). Both Hooper and Hathorn attended the Loudermill hearing, as did Palmer and her union representatives. At the hearing, the Board characterized Palmer’s conduct as a violation of the employee attendance policy; insubordination by virtue of making false statements to administrators; and, with regard to the misdemeanor conviction, conduct unbecoming an employee of the Board. The parties then entered into a “last chance agreement” in which Palmer agreed to: (1) take an unpaid absence for September 8, 2006, in lieu of a one-day suspension without pay; (2) provide updated physician’s statements to Hooper regarding her absences starting on September 18; (3) submit to random drug testing for one year; (4) participate in drug counseling at Tri-County Employee Assistance Program (“EAP”); and (5) be reassigned to another school pursuant to her request. On September 26, Palmer received a letter memorializing the terms of the “last chance agreement” and directing her to respond if she did “not agree with the statements made in [the] conference summary letter.” Palmer neither responded to the letter nor informed the Board that the suspension of her driver’s license would prevent her from attending drug counseling or appearing for random drug testing.
On October 13, Palmer entered Glover with the stated purpose of attending a PTA meeting,[2] at which time a confrontation between Palmer and Cacioppo ensued. The parties dispute the nature of this confrontation; Palmer alleges that Cacioppo took her into Cacioppo’s office, prevented her from leaving, and threatened her with undisclosed consequences if she pursued a sexual harassment claim. Cacioppo states that she instructed Palmer to leave the premises and that Palmer refused to do so, instead retreating to a different part of the building. Both versions apparently involved yelling and foul language. Thereafter, building security was contacted, and Palmer’s car was towed.
Following Palmer’s reassignment to a new school, Hooper informed her that she was required to submit to drug testing on a date of her choosing before returning to work. Palmer selected November 10, 2006; submitted to testing on this date; and reported to work on November 13, but *495 missed a scheduled drug counseling session at Tri-County EAP. On November 16, Hooper received a call from the Community Health Center stating that Palmer had tested positive for opiates and marijuana; she then sent a letter to Palmer apprising her that a second Loudermill hearing would be convened on November 30 to discuss Palmer’s drug test and related substance abuse, insubordination, and contract violations. Although her union representatives were present, Palmer did not attend the second Loudermill hearing. At a meeting on December 12, the Board accepted the recommendation of Hooper and Hathorn to terminate Palmer’s employment effective December 12, 2006.
II.
We review de novo a district court’s grant of summary judgment. Hamilton v. Starcom Mediavest Group, Inc., 522 F.3d 623, 627 (6th Cir.2008). “Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). The moving party bears the initial burden of production. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). “After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some ‘specific facts showing that there is a genuine issue for trial.’” Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir.2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). “[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law.” Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir.2001).
In evaluating a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. Hamilton, 522 F.3d at 627 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The central issue is “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.” Anderson, 477 U.S. at 251-52, 106 S.Ct. 2505.
A.
Palmer claims that Hooper unlawfully interfered with her rights under the FMLA, 29 U.S.C. § 2601 et seq., by authorizing her medical leave and subsequently recommending her termination, in part for “excessive absenteeism,” based upon these absences. The district court granted summary judgment to the respondents on the grounds that there was no evidence in the record that Palmer was denied FMLAqualified leave and that Palmer’s termination did not stem from any approved absences, but rather was due to her repeated failure to submit timely absence forms. We agree.
The FMLA entitles eligible employees to twelve weeks of unpaid leave within a twelve-month period when, among other qualifying reasons, the employee suffers from “a serious health condition that makes the employee unable to perform the functions of the position.” 29 U.S.C. § 2612(a)(1)(D); see also 29 U.S.C. § 2611(11) (defining a “serious health condition” as “an illness, injury, impairment, or physical or mental condition” that requires either inpatient care or “continuing treatment by a health care provider”). Enacted to enhance job security for employees suffering from serious health conditions, the FMLA “renders it ‘unlawful *496 for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right’ that it affords.” Brenneman v. MedCentral Health Sys., 366 F.3d 412, 422 (6th Cir.2004) (quoting 29 U.S.C. § 2615(a)(1)); see also 29 U.S.C. § 2601(b). The implementing regulations further prohibit “an employer from discriminating or retaliating against an employee ... for having exercised or attempted to exercise FMLA rights.” 29 C.F.R. § 825.220(c). In particular, “employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as ... disciplinary actions.” Id. “Employers who violate § 2615 are ‘liable to any eligible employee affected’ for damages and ‘for such equitable relief as may be appropriate.’ ” Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir.2003) (quoting 29 U.S.C. § 2617(a)(1)).
To prevail on a claim alleging unlawful interference with FMLA rights, the employee must establish that “(1) [s]he is an ‘[eligible employee,’ 29 U.S.C. § 2611(2); (2) the defendant is an ‘[e]mployer,’ 29 U.S.C. § 2611(4); (3)[she] was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(i); (4)[she] gave the employer notice of [her] intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied [her] FMLA benefits to which s[he] was entitled.” Cavin, 346 F.3d at 719. If leave is foreseeable, “[a]n employee must provide the employer at least 30 days advance notice before FMLA leave is to begin.” 29 C.F.R. § 825.302(a). When leave is not foreseeable, “an employee must provide notice to the employer as soon as practicable” and “must comply with the employer’s usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.” 29 C.F.R. § 825.303(a), (c). If, however, no unusual circumstances obtain, and the employee has not complied with the employ.er’s customary procedures for requesting leave, “FMLA-protected leave may be delayed or denied.” 29 C.F.R. § 825.303(c). Here, Palmer has not alleged that any unusual circumstances hampered her ability to comply with the Board’s customary leave procedures.
Based upon these requirements, Palmer has not stated a colorable claim for unlawful interference with her FMLA rights. Aside from the conclusory assertions in her absence forms and deposition testimony that she was “ill” or was “having medical problems,” the record is devoid of evidence demonstrating that Palmer suffered from a serious health condition, a threshold requirement under the FMLA. Palmer does not press this point on appeal. Rather, she argues that “Hooper signed and approved each of the days as valid medical leave.” This argument, however, ignores the fact that not all “approved” medical leave is FMLA-qualified leave; pursuant to 29 U.S.C. § 2612(a)(1)(D), an eligible employee seeking FMLA leave must suffer from “a serious health condition that makes the employee unable to perform the functions of [her job].” Although Palmer disputes her termination for “authorized medical leave,” she does not allege on appeal that she suffered from a serious health condition and, accordingly, has failed to demonstrate entitlement to FMLA leave.
Nor has Palmer demonstrated that the Board denied any FMLA benefit that she was owed. Indeed, the record reflects that Palmer received compensation and benefits for her medical absences, notwithstanding her untimely absence forms. Instead, Palmer argues that Hooper approved her various absences and then recommended her termination for excessive absenteeism, thereby interfering with her exercise of FMLA rights. This contention is without merit. As reflected in her dis *497 charge letter on December 12, 2006, Palmer was terminated for a variety of infractions, including excessive absenteeism or tardiness, absence without leave, misconduct toward other city employees, insubordination, and conduct unbecoming a public employee. In her deposition, Hooper explained that the charge of excessive absenteeism pertained to Palmer’s repeated failure to file her absence forms in a timely manner and to her unauthorized absence on September 5 and that Palmer’s termination was not based upon her medical absences. The termination letter likewise supports this interpretation; it states that “Mrs. Palmer was absent from September 1 through November 10, 2006 and did not file absence forms in a timely manner.” In sum, Palmer has not demonstrated that she was unlawfully denied any FMLA benefits, nor has she shown that she was terminated for taking medical leave. Accordingly, we affirm the district court’s grant of summary judgment with respect to Palmer’s FMLA claim.
B.
Palmer next argues under 42 U.S.C. § 1983 that Hooper violated her Fourth Amendment rights against unreasonable search and seizure by demanding that she submit to drug testing as a condition of continued employment. The district court granted summary judgment to the respondents on the grounds that Palmer voluntarily entered into the “last chance agreement” in which she agreed to undergo random drug testing for one year. It further noted that, given Palmer’s conviction for misdemeanor marijuana possession, the drug testing requirement served as a reasonable mechanism for enforcing the Board’s policy prohibiting substance abuse by school employees while at work.
The Fourth Amendment safeguards the privacy of individuals against unwarranted governmental intrusions by providing, in pertinent part, that “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const, amend. IV. “In assessing whether the right against unreasonable searches and seizures has been violated, the court must consider whether the action is ‘attributable to the government,’ and amounts to a ‘search’ or ‘seizure’ for Fourth Amendment purposes.” Relford v. Lexington-Fayette Urban Cnty. Gov’t, 390 F.3d 452, 457 (6th Cir.2004) (quoting Skinner v. Ry. Labor Exec. Ass’n, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). Here, the drug test at issue is undisputedly attributable to the government, as it was ordered by the Board pursuant to Palmer’s “last chance agreement.”
It “is now well-settled that drug testing which utilizes urinalysis is a ‘search’ that falls within the ambit of the Fourth Amendment.” Knox Cnty. Educ. Ass’n v. Knox Cnty. Bd. of Educ., 158 F.3d 361, 371 (6th Cir.1998); see also Int’l Union v. Winters, 385 F.3d 1003, 1007 (6th Cir.2004) (noting that “[i]t is beyond dispute that government ordered collection and testing of urine samples effects a search within the meaning of the Fourth Amendment as such tests intrude upon reasonable expectations of privacy that society has long recognized as reasonable”). Because drug testing constitutes a search under the Fourth Amendment, “we must therefore review the [Board’s] policy for reasonableness, ‘which is the touchstone of the constitutionality of a government search.’ ” Winters, 385 F.3d at 1007 (quoting Bd. of Educ. v. Earls, 536 U.S. 822, 828, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002)). To determine whether the drug testing requirement contained in the “last chance agreement” was reasonable, we *498 balance the public interest in this testing against Palmer’s privacy expectations. Knox Cnty. Educ. Ass’n, 158 F.3d at 373; see also Chandler v. Miller, 520 U.S. 305, 314, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997); Nat’l Treasury Emp. Union v. Von Raab, 489 U.S. 656, 665-66, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).
Palmer contends that, despite agreeing to submit to random drug testing for one year, her consent was in fact “the product of coercion,” apparently because she would have been terminated if she refused the conditions of employment contemplated by the “last chance agreement.” This argument is without merit. Indeed, we have upheld policies permitting both suspicion-less and suspicion-based drug testing of employees who work in the highly-regulated field of public school employment, irrespective of consent. In Knox County Education Association, this circuit had occasion to evaluate the constitutionality of the Knox County Board of Education’s suspicion-less and suspicion-based drug testing policies of school employees against a facial Fourth Amendment challenge. 158 F.3d at 384-85. We observed that employee consent to the testing policy at issue was not required; rather, “the privacy interest for the employees not to be tested [was] significantly diminished by the level of regulation of their jobs and by the nature of the work itself.” Id. at 384. As to the constitutionality of suspicion-based testing, we concluded that the policy comported with the Fourth Amendment’s reasonableness requirement because it was “clearly based upon a finding of individualized suspicion.” Id. at 385.
Knox County Education Association is controlling here, and this case presents an even stronger case for finding no Fourth Amendment violation. The Board’s one-year random drug testing requirement was reasonable, particularly in light of Palmer’s conviction for misdemeanor marijuana possession. The record reflects that the Board enacted various administrative regulations restricting substance abuse among school employees while on duty. The drug-free workplace policy states that “[a]ll employees as a condition of employment are required to abide by the Board policy ... related to a drug-free workplace and to submit to the substance abuse prevention and testing program.” The Board’s substance abuse policy further provides that “[b]eing under the influence of ... drugs while on duty, on school property, or at a school related activity/event is not acceptable.” Moreover, “reporting to work under the influence of ... drugs ... will result in appropriate corrective or disciplinary action as determined by the Board, up to and including termination.” Finally, although it offered an employee assistance program, the Board stated that it “cannot guarantee that the staff member’s use of illegal drugs ... will not adversely impact the staff member’s employment status through disciplinary measures.”
Given Palmer’s marijuana conviction, the Board’s concern that she might report to work under the influence was well-founded. See, e.g., Knox Cnty. Educ. Ass’n, 158 F.3d at 384-85 (upholding a suspicion-based drug testing policy that, in pertinent part, permitted drug testing of school employees who violated “criminal drug law statutes involving the use of illegal drugs” because “the testing is clearly based upon a finding of individualized suspicion”). And, like the employees in Knox County Education Association, Palmer’s privacy interest was significantly diminished by the nature of her job. Id. at 384. Moreover, her consent to the agreement also served to reduce her privacy interest further.[3] See Norris v. Premier Integrity *499 Solutions, Inc., 641 F.3d 695, 699 (6th Cir.2011) (noting that defendant’s expectations of privacy were diminished by his consent “to random drug testing as a condition of his pretrial release”).
Balancing the public interest in Palmer’s drug testing against her expectation of privacy, and construing all reasonable inferences in Palmer’s favor, we conclude that the one-year random drug testing requirement served as a reasonable means of ensuring her compliance with the Board’s drug-free workplace policy and did not violate her Fourth Amendment rights. Accordingly, we affirm the district court’s grant of summary judgment.
C.
In her final claim, Palmer argues that her refusal to consent to Cacioppo’s sexual advances resulted in Cacioppo’s “houndpng] her on a daily bases [sic] about her work” and eventually caused her termination. The district court granted summary judgment to the respondents, finding “absolutely no evidence of a connection between the alleged harassment and [Palmer’s] termination,” and we agree.
Title VII of the Civil Rights Act of 1964 prohibits an employer from “discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s ... sex.” 42 U.S.C. § 2000e-2(a)(1). Under Title VII, an employer may not engage in quid pro quo sexual harassment, “which occurs when an employee’s submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action.” Howington v. Quality Rest. Concepts, LLC, 298 Fed.Appx. 436, 440 (6th Cir.2008). To prevail on a claim alleging quid pro quo sexual harassment, an employee must demonstrate:
1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) ... that the employee’s refusal to submit to the supervisor’s sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.
Id. at 441.
Although Palmer contends that Cacioppo “staged” her termination based upon Palmer’s “refusal to have sex with her,” she has not presented any evidence suggesting a causal relationship between the alleged sexual harassment and her discharge months later.[4] Indeed, Palmer’s notice of termination makes perfectly clear that her discharge was premised upon nu *500 merous infractions, including her unauthorized absence on September 5; her repeated submission of untimely absence forms; and her failure to attend a scheduled drug counseling session at Tri-County EAP, as required by the “last chance agreement.” Furthermore, the “last chance agreement” states explicitly that Palmer’s failure to abide by the agreed-upon conditions of employment — including drug counseling — could “result in further disciplinary action to include ... termination.” While Palmer asserts in her brief that “Hooper clearly acted in complicity with Cacioppo to have [her] terminated,” she has not presented any evidence supporting such a claim.
Because she has failed to demonstrate a causal relationship between her refusal to submit to Cacioppo’s alleged sexual advances and her termination, Palmer’s claim of quid pro quo sexual harassment is without merit. Accordingly, we affirm the district court’s grant of summary judgment.
III.
For these reasons, we affirm the district court’s judgment in all respects.[5]

. Palmer attributes her failure to file a formal harassment complaint in this matter to her distrust of the Board, who did not pursue Palmer's sexual harassment claim in a prior, unrelated matter. In the prior incident, in which an unidentified male caller left a message on her husband's work phone claiming to have engaged in sexual activity with Palmer, the Board determined that it could not positively identify the caller. Although the Board informed Palmer that she could file a report with the local police department, she did not do so.

. The Board states that, as discussed at her Loudermill hearing, Palmer was no longer permitted to enter Glover. Palmer disputes this interpretation, and we find no evidence in the record supporting such a prohibition.

. In her brief, Palmer argues that her consent was involuntary because it was obtained upon *499 threat of termination or, in the alternative, that she withdrew consent by "refusing” to submit to the drug testing. The record, however, does not support these arguments. In her deposition, when asked whether she had agreed to submit to random drug testing for one year at the September 22 hearing, Palmer repeatedly answered, "yes.” By correspondence dated September 26, the Board reiterated the terms of the "last chance agreement” and invited Palmer to reply with any written objections by October 3 if she did "not agree with the statements made in this ... letter,” including the drug testing requirement. Yet, Palmer did not file any objections. Furthermore, Palmer’s deposition testimony makes clear that she did not "refuse” to submit to drug testing. Although Hooper asked her "at least three times” to take a drug test, Palmer testified that she did not do so on the first two occasions because her driver's license was suspended, and she did not have transportation.

. The dissent suggests that the defendants have supported their motion with insufficient evidence. This reasoning misunderstands the defendants's burden. Under applicable summary judgment analysis, defendants may simply point to plaintiff's lack of evidence to support a necessary element of her claim. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 *500 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that "the burden on the moving party may be discharged by 'showing' — that is, point out to the district court — that there is an absence of evidence to support the nonmoving party's case”). If the plaintiff has failed to adduce such evidence, summary judgment is properly granted. Thompson, 250 F.3d at 405.

. Palmer also argues that the district court relied improperly upon various forms of hearsay in granting summary judgment to the respondents. This argument is without merit. Although the district court referenced Null’s email to Cacioppo regarding student enrollment in the statement of facts, it did not rely upon hearsay statements in its reasoning supporting summary judgment.