**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 11a0427n.06**

**No. 09-3924**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 28, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| LAUREN JUSTINE PALMER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| REBECCA CACIOPPO, et al., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner Lauren Palmer appeals a district court order granting summary judgment to respondents Rebecca Cacioppo, Kathy Hooper, and the Akron Board of Education (the "Board"). She contends that the district court erred in granting summary judgment on the following claims: (1) denial of her right to medical leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (2) unreasonable search and seizure in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983; and (3) *quid pro quo* sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* For the reasons that follow, we affirm the district court.

I.

Petitioner Lauren Palmer is a former employee of the Board, where she worked for thirteen years, primarily as a secretary at Glover Elementary School ("Glover"), until her termination on

December 12, 2006. Respondents Cacioppo and Hooper were likewise employed by the public school system, with Cacioppo serving as Glover's principal and Hooper working as the coordinator of support staff for the Board. Palmer reported to Glover in mid-August 2006, approximately two weeks before the start of the school year, when she and Cacioppo were the only employees required to be on the school premises. The events giving rise to this litigation stem, in part, from Palmer's interactions with Cacioppo in the weeks before school began.

On one occasion during this time period, Cacioppo invited Palmer to join her at Strickland's, a local ice cream shop. Although the ensuing circumstances are disputed by the parties, Palmer claims that Cacioppo requested that they sit in a secluded area and made sexual advances towards Palmer, including licking an ice cream cone in a sexually explicit manner and suggesting that they engage in sexual acts. After rejecting Cacioppo's advances, Palmer alleges that she was repeatedly harassed by Cacioppo, who denigrated her work performance in emails to other people, including Hooper, and prevented her from timely completing kindergarten student enrollment. Palmer did not file an official complaint with the Akron School District concerning the alleged sexual harassment by Cacioppo, nor did she immediately report the incident to anyone. Palmer estimates, however, that she later informed several people of the harassment sometime in September, including her general practitioner, Dr. Ann DiFrangia; her attorney; her union representative; and Dr. Connie Hathorn, the Executive Director of Human Resources for Akron Public Schools. Neither Palmer nor Hathorn pursued the matter.[1]

_____

[1]Palmer attributes her failure to file a formal harassment complaint in this matter to her distrust of the Board, who did not pursue Palmer's sexual harassment claim in a prior, unrelated

Shortly thereafter, Palmer missed numerous days of work; she was absent from September 1 to November 10, 2006. The parties contest whether some of these absences were authorized, in particular Palmer's trip to Jamaica from September 5–8. When Palmer failed to report to work on September 5, Cacioppo sought the assistance of Sharon Null, who also worked as a secretary for the public schools, to aid with student enrollment at Glover. Null reported to Hooper that "no one ha[d] been enrolled" in Glover's enrollment system and that "attendance ha[d] not been entered thus far this school year," apparently implying that Palmer had neglected her job duties.

Though the exact dates are not clear from the record, the respondents learned at some time around the start of the school year that Palmer had pled guilty in municipal court on August 9, 2006, to misdemeanor possession of marijuana and, in addition to being subject to a fine and a suspended driver's license, was required to write an essay concerning the dangers of marijuana. The respondents further learned that a bench warrant had issued for Palmer on August 26, 2006, for failure to timely complete the essay; this warrant was later recalled when Palmer submitted her essay within an extended deadline of September 11, 2006. Hooper contends that, sometime between August 26 and September 11, Palmer falsely told both Hooper and Hathorn that she had satisfied her sentence when, in fact, she had not.

On September 22, 2006, the Board held a due process hearing, as required by *Cleveland Board of Education v. Loudermill*, to address Palmer's continued absence from work, her

---

matter. In the prior incident, in which an unidentified male caller left a message on her husband's work phone claiming to have engaged in sexual activity with Palmer, the Board determined that it could not positively identify the caller. Although the Board informed Palmer that she could file a report with the local police department, she did not do so.

unapproved absences on September 5–8, the misdemeanor drug conviction, and Palmer's related misrepresentations to Hooper and Hathorn concerning the satisfaction of her sentence. 470 U.S. 532, 546 (1985) (providing public employees a constitutional right to pre-termination due process). Both Hooper and Hathorn attended the *Loudermill* hearing, as did Palmer and her union representatives. At the hearing, the Board characterized Palmer's conduct as a violation of the employee attendance policy; insubordination by virtue of making false statements to administrators; and, with regard to the misdemeanor conviction, conduct unbecoming an employee of the Board. The parties then entered into a "last chance agreement" in which Palmer agreed to: (1) take an unpaid absence for September 8, 2006, in lieu of a one-day suspension without pay; (2) provide updated physician's statements to Hooper regarding her absences starting on September 18; (3) submit to random drug testing for one year; (4) participate in drug counseling at Tri-County Employee Assistance Program ("EAP"); and (5) be reassigned to another school pursuant to her request. On September 26, Palmer received a letter memorializing the terms of the "last chance agreement" and directing her to respond if she did "not agree with the statements made in [the] conference summary letter." Palmer neither responded to the letter nor informed the Board that the suspension of her driver's license would prevent her from attending drug counseling or appearing for random drug testing.

On October 13, Palmer entered Glover with the stated purpose of attending a PTA meeting,[2] at which time a confrontation between Palmer and Cacioppo ensued. The parties dispute the nature

---

[2]The Board states that, as discussed at her *Loudermill* hearing, Palmer was no longer permitted to enter Glover. Palmer disputes this interpretation, and we find no evidence in the record supporting such a prohibition.

of this confrontation; Palmer alleges that Cacioppo took her into Cacioppo's office, prevented her from leaving, and threatened her with undisclosed consequences if she pursued a sexual harassment claim. Cacioppo states that she instructed Palmer to leave the premises and that Palmer refused to do so, instead retreating to a different part of the building. Both versions apparently involved yelling and foul language. Thereafter, building security was contacted, and Palmer's car was towed.

Following Palmer's reassignment to a new school, Hooper informed her that she was required to submit to drug testing on a date of her choosing before returning to work. Palmer selected November 10, 2006; submitted to testing on this date; and reported to work on November 13, but missed a scheduled drug counseling session at Tri-County EAP. On November 16, Hooper received a call from the Community Health Center stating that Palmer had tested positive for opiates and marijuana; she then sent a letter to Palmer apprising her that a second *Loudermill* hearing would be convened on November 30 to discuss Palmer's drug test and related substance abuse, insubordination, and contract violations. Although her union representatives were present, Palmer did not attend the second *Loudermill* hearing. At a meeting on December 12, the Board accepted the recommendation of Hooper and Hathorn to terminate Palmer's employment effective December 12, 2006.

## II.

We review *de novo* a district court's grant of summary judgment. *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008). "Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of production. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  "After the moving party has met its burden, the burden shifts to

the nonmoving party, who must present some 'specific facts showing that there is a genuine issue

for trial.'" *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) (quoting *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[I]f the nonmoving party fails to make a

sufficient showing on an essential element of the case with respect to which the nonmovant has the

burden, the moving party is entitled to summary judgment as a matter of law." *Thompson v. Ashe*,

250 F.3d 399, 405 (6th Cir. 2001).

In evaluating a motion for summary judgment, the district court must construe all reasonable

inferences in favor of the nonmoving party.  *Hamilton*, 522 F.3d at 627 (citing *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The central issue is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

A.

Palmer claims that Hooper unlawfully interfered with her rights under the FMLA, 29 U.S.C.

§ 2601 *et seq.*, by authorizing her medical leave and subsequently recommending her termination,

in part for "excessive absenteeism," based upon these absences.  The district court granted summary

judgment to the respondents on the grounds that there was no evidence in the record that Palmer was

denied FMLA-qualified leave and that Palmer's termination did not stem from any approved

absences, but rather was due to her repeated failure to submit timely absence forms.  We agree.

The FMLA entitles eligible employees to twelve weeks of unpaid leave within a twelve-

month period when, among other qualifying reasons, the employee suffers from "a serious health

condition that makes the employee unable to perform the functions of the position." 29 U.S.C. §

2612(a)(1)(D); *see also* 29 U.S.C. § 2611(11) (defining a "serious health condition" as "an illness,

injury, impairment, or physical or mental condition" that requires either inpatient care or "continuing

treatment by a health care provider"). Enacted to enhance job security for employees suffering from

serious health conditions, the FMLA "renders it 'unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise any right' that it affords." *Brenneman v.*

*MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004) (quoting 29 U.S.C. § 2615(a)(1)); *see*

*also* 29 U.S.C. § 2601(b). The implementing regulations further prohibit "an employer from

discriminating or retaliating against an employee . . . for having exercised or attempted to exercise

FMLA rights." 29 C.F.R. § 825.220(c). In particular, "employers cannot use the taking of FMLA

leave as a negative factor in employment actions, such as . . . disciplinary actions." *Id.* "Employers

who violate § 2615 are 'liable to any eligible employee affected' for damages and 'for such equitable

relief as may be appropriate.'" *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)

(quoting 29 U.S.C. § 2617(a)(1)).

To prevail on a claim alleging unlawful interference with FMLA rights, the employee must

establish that "(1) [s]he is an '[e]ligible employee,' 29 U.S.C. § 2611(2); (2) the defendant is an

'[e]mployer,' 29 U.S.C. § 2611(4); (3) [she] was entitled to leave under the FMLA, 29 U.S.C. §

2612(a)(i); (4) [she] gave the employer notice of [her] intention to take leave, 29 U.S.C. §

2612(e)(1); and (5) the employer denied [her] FMLA benefits to which s[he] was entitled." *Cavin*,

346 F.3d at 719. If leave is foreseeable, "[a]n employee must provide the employer at least 30 days

advance notice before FMLA leave is to begin." 29 C.F.R. § 825.302(a). When leave is not

foreseeable, "an employee must provide notice to the employer as soon as practicable" and "must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(a), (c). If, however, no unusual circumstances obtain, and the employee has not complied with the employer's customary procedures for requesting leave, "FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.303(c). Here, Palmer has not alleged that any unusual circumstances hampered her ability to comply with the Board's customary leave procedures.

Based upon these requirements, Palmer has not stated a colorable claim for unlawful interference with her FMLA rights. Aside from the conclusory assertions in her absence forms and deposition testimony that she was "ill" or was "having medical problems," the record is devoid of evidence demonstrating that Palmer suffered from a serious health condition, a threshold requirement under the FMLA. Palmer does not press this point on appeal. Rather, she argues that "Hooper signed and approved each of the days as valid medical leave." This argument, however, ignores the fact that not all "approved" medical leave is FMLA-qualified leave; pursuant to 29 U.S.C. § 2612(a)(1)(D), an eligible employee seeking FMLA leave must suffer from "a serious health condition that makes the employee unable to perform the functions of [her job]." Although Palmer disputes her termination for "authorized medical leave," she does not allege on appeal that she suffered from a serious health condition and, accordingly, has failed to demonstrate entitlement to FMLA leave.

Nor has Palmer demonstrated that the Board denied any FMLA benefit that she was owed. Indeed, the record reflects that Palmer received compensation and benefits for her medical absences,

notwithstanding her untimely absence forms. Instead, Palmer argues that Hooper approved her various absences and then recommended her termination for excessive absenteeism, thereby interfering with her exercise of FMLA rights. This contention is without merit. As reflected in her discharge letter on December 12, 2006, Palmer was terminated for a variety of infractions, including excessive absenteeism or tardiness, absence without leave, misconduct toward other city employees, insubordination, and conduct unbecoming a public employee. In her deposition, Hooper explained that the charge of excessive absenteeism pertained to Palmer's repeated failure to file her absence forms in a timely manner and to her unauthorized absence on September 5 and that Palmer's termination was not based upon her medical absences. The termination letter likewise supports this interpretation; it states that "Mrs. Palmer was absent from September 1 through November 10, 2006 and did not file absence forms in a timely manner." In sum, Palmer has not demonstrated that she was unlawfully denied any FMLA benefits, nor has she shown that she was terminated for taking medical leave. Accordingly, we affirm the district court's grant of summary judgment with respect to Palmer's FMLA claim.

## B.

Palmer next argues under 42 U.S.C. § 1983 that Hooper violated her Fourth Amendment rights against unreasonable search and seizure by demanding that she submit to drug testing as a condition of continued employment. The district court granted summary judgment to the respondents on the grounds that Palmer voluntarily entered into the "last chance agreement" in which she agreed to undergo random drug testing for one year. It further noted that, given Palmer's conviction for misdemeanor marijuana possession, the drug testing requirement served as a

reasonable mechanism for enforcing the Board's policy prohibiting substance abuse by school employees while at work.

The Fourth Amendment safeguards the privacy of individuals against unwarranted governmental intrusions by providing, in pertinent part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "In assessing whether the right against unreasonable searches and seizures has been violated, the court must consider whether the action is 'attributable to the government,' and amounts to a 'search' or 'seizure' for Fourth Amendment purposes." *Relford v. Lexington-Fayette Urban Cnty. Gov't*, 390 F.3d 452, 457 (6th Cir. 2004) (quoting *Skinner v. Ry. Labor Exec. Ass'n*, 489 U.S. 602, 614 (1989)). Here, the drug test at issue is undisputedly attributable to the government, as it was ordered by the Board pursuant to Palmer's "last chance agreement."

It "is now well-settled that drug testing which utilizes urinalysis is a 'search' that falls within the ambit of the Fourth Amendment." *Knox Cnty. Educ. Ass'n v. Knox Cnty. Bd. of Educ.*, 158 F.3d 361, 371 (6th Cir. 1998); *see also Int'l Union v. Winters*, 385 F.3d 1003, 1007 (6th Cir. 2004) (noting that "[i]t is beyond dispute that government ordered collection and testing of urine samples effects a search within the meaning of the Fourth Amendment as such tests intrude upon reasonable expectations of privacy that society has long recognized as reasonable"). Because drug testing constitutes a search under the Fourth Amendment, "we must therefore review the [Board's] policy for reasonableness, 'which is the touchstone of the constitutionality of a government search.'" *Winters*, 385 F.3d at 1007 (quoting *Bd. of Educ. v. Earls*, 536 U.S. 822, 828 (2002)). To determine

whether the drug testing requirement contained in the "last chance agreement" was reasonable, we balance the public interest in this testing against Palmer's privacy expectations. *Knox Cnty. Educ. Ass'n*, 158 F.3d at 373; *see also Chandler v. Miller*, 520 U.S. 305, 314 (1997); *Nat'l Treasury Emp. Union v. Von Raab*, 489 U.S. 656, 665–66 (1989).

Palmer contends that, despite agreeing to submit to random drug testing for one year, her consent was in fact "the product of coercion," apparently because she would have been terminated if she refused the conditions of employment contemplated by the "last chance agreement." This argument is without merit. Indeed, we have upheld policies permitting both suspicion-less and suspicion-based drug testing of employees who work in the highly-regulated field of public school employment, irrespective of consent. In *Knox County Education Association*, this circuit had occasion to evaluate the constitutionality of the Knox County Board of Education's suspicion-less and suspicion-based drug testing policies of school employees against a facial Fourth Amendment challenge. 158 F.3d at 384–85. We observed that employee consent to the testing policy at issue was not required; rather, "the privacy interest for the employees not to be tested [was] significantly diminished by the level of regulation of their jobs and by the nature of the work itself." *Id.* at 384. As to the constitutionality of suspicion-based testing, we concluded that the policy comported with the Fourth Amendment's reasonableness requirement because it was "clearly based upon a finding of individualized suspicion." *Id.* at 385.

*Knox County Education Association* is controlling here, and this case presents an even stronger case for finding no Fourth Amendment violation. The Board's one-year random drug testing requirement was reasonable, particularly in light of Palmer's conviction for misdemeanor

marijuana possession. The record reflects that the Board enacted various administrative regulations restricting substance abuse among school employees while on duty. The drug-free workplace policy states that "[a]ll employees as a condition of employment are required to abide by the Board policy . . . related to a drug-free workplace and to submit to the substance abuse prevention and testing program." The Board's substance abuse policy further provides that "[b]eing under the influence of . . . drugs while on duty, on school property, or at a school related activity/event is not acceptable." Moreover, "reporting to work under the influence of . . . drugs . . . will result in appropriate corrective or disciplinary action as determined by the Board, up to and including termination." Finally, although it offered an employee assistance program, the Board stated that it "cannot guarantee that the staff member's use of illegal drugs . . . will not adversely impact the staff member's employment status through disciplinary measures."

Given Palmer's marijuana conviction, the Board's concern that she might report to work under the influence was well-founded. *See, e.g.*, *Knox Cnty. Educ. Ass'n*, 158 F.3d at 384–85 (upholding a suspicion-based drug testing policy that, in pertinent part, permitted drug testing of school employees who violated "criminal drug law statutes involving the use of illegal drugs" because "the testing is clearly based upon a finding of individualized suspicion"). And, like the employees in *Knox County Education Association*, Palmer's privacy interest was significantly diminished by the nature of her job. *Id.* at 384. Moreover, her consent to the agreement also served to reduce her privacy interest further.[3] *See Norris v. Premier Integrity Solutions, Inc.*, — F.3d —,

[3]In her brief, Palmer argues that her consent was involuntary because it was obtained upon threat of termination or, in the alternative, that she withdrew consent by "refusing" to submit to the

-12-

No. 09-6252, 2011 WL 1261188, at *2 (6th Cir. 2011) (noting that defendant's expectations of privacy were diminished by his consent "to random drug testing as a condition of his pretrial release").

Balancing the public interest in Palmer's drug testing against her expectation of privacy, and construing all reasonable inferences in Palmer's favor, we conclude that the one-year random drug testing requirement served as a reasonable means of ensuring her compliance with the Board's drug-free workplace policy and did not violate her Fourth Amendment rights. Accordingly, we affirm the district court's grant of summary judgment.

C.

In her final claim, Palmer argues that her refusal to consent to Cacioppo's sexual advances resulted in Cacioppo's "hound[ing] her on a daily bases [sic] about her work" and eventually caused her termination. The district court granted summary judgment to the respondents, finding "absolutely no evidence of a connection between the alleged harassment and [Palmer's] termination," and we agree.

---

drug testing. The record, however, does not support these arguments. In her deposition, when asked whether she had agreed to submit to random drug testing for one year at the September 22 hearing, Palmer repeatedly answered, "yes." By correspondence dated September 26, the Board reiterated the terms of the "last chance agreement" and invited Palmer to reply with any written objections by October 3 if she did "not agree with the statements made in this . . . letter," including the drug testing requirement. Yet, Palmer did not file any objections. Furthermore, Palmer's deposition testimony makes clear that she did not "refuse" to submit to drug testing. Although Hooper asked her "at least three times" to take a drug test, Palmer testified that she did not do so on the first two occasions because her driver's license was suspended, and she did not have transportation.

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, an employer may not engage in *quid pro quo* sexual harassment, "which occurs when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action." *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 440 (6th Cir. 2008). To prevail on a claim alleging *quid pro quo* sexual harassment, an employee must demonstrate:

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) . . . that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Id.* at 441.

Although Palmer contends that Cacioppo "staged" her termination based upon Palmer's "refusal to have sex with her," she has not presented any evidence suggesting a causal relationship between the alleged sexual harassment and her discharge months later.[4] Indeed, Palmer's notice of

---

[4]The dissent suggests that the defendants have supported their motion with insufficient evidence. This reasoning misunderstands the defendants's burden. Under applicable summary judgment analysis, defendants may simply point to plaintiff's lack of evidence to support a necessary element of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (stating that "the burden on the moving party may be discharged by 'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case"). If the plaintiff has failed to adduce such evidence, summary judgment is properly granted. *Thompson*, 250 F.3d at 405.

termination makes perfectly clear that her discharge was premised upon numerous infractions, including her unauthorized absence on September 5; her repeated submission of untimely absence forms; and her failure to attend a scheduled drug counseling session at Tri-County EAP, as required by the "last chance agreement." Furthermore, the "last chance agreement" states explicitly that Palmer's failure to abide by the agreed-upon conditions of employment—including drug counseling—could "result in further disciplinary action to include . . . termination." While Palmer asserts in her brief that "Hooper clearly acted in complicity with Cacioppo to have [her] terminated," she has not presented any evidence supporting such a claim.

Because she has failed to demonstrate a causal relationship between her refusal to submit to Cacioppo's alleged sexual advances and her termination, Palmer's claim of *quid pro quo* sexual harassment is without merit. Accordingly, we affirm the district court's grant of summary judgment.

III.

For these reasons, we affirm the district court's judgment in all respects.[5]

---

[5]Palmer also argues that the district court relied improperly upon various forms of hearsay in granting summary judgment to the respondents. This argument is without merit. Although the district court referenced Null's email to Cacioppo regarding student enrollment in the statement of facts, it did not rely upon hearsay statements in its reasoning supporting summary judgment.

No. 09-3924
*Palmer v. Cacioppo*

**CLAY, Circuit Judge, dissenting.** Neither the record in this case nor the applicable law support the district court's grant of summary judgment for Defendants on Plaintiff's claims arising under 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1). We should therefore reverse and remand for further proceedings. Because the majority erroneously affirms the judgment of the district court as explained below, I respectfully dissent.[1]

I.      **Section 1983 Claim**

In her claim under 42 U.S.C. § 1983, Plaintiff alleges that Defendant Hooper violated her Fourth Amendment right to be free from unreasonable search and seizure by directing her to undergo drug testing. The district court granted summary judgment for Hooper based on a finding that Plaintiff consented to the drug testing,[2] and that the drug testing was reasonable.

Because Plaintiff is a public employee and submitted to the drug testing at the behest of her employer, the drug testing implicates the Fourth Amendment and must therefore be reasonable to pass constitutional muster. *See, e.g.*, *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 614

---

[1]With respect to Plaintiff's claim arising under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, Plaintiff did not appeal the district court's determination that she does not have a "serious medical condition," a threshold requirement under the FMLA. *See Branham v. Gannett Satellite Info. Net., Inc.*, 619 F.3d 563, 568 (6th Cir. 2010). Therefore, the propriety of the entry of summary judgment on Plaintiff's FMLA claim need not be addressed.

[2]It is unclear whether a public employee may validly consent to an otherwise unreasonable drug testing policy, but the issue was neither briefed by the parties, nor discussed by the district court, and consequently we need not consider the issue for purposes of this appeal. *See, e.g.*, *Nat'l Fed'n of Fed. Employees v. Weinberger*, 818 F.2d 935, 943 (D.C. Cir. 1987) ("[A] search otherwise unreasonable cannot be redeemed by a public employer's exaction of a 'consent' to the search as a condition of employment.") (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

-16-

(1989). Reasonableness in this context is determined by balancing the public interest in such testing with the privacy rights of the individuals subject to the testing. *See, e.g.*, *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 670-71 (1989); *Knox Cnty. Educ. Assoc. v. Knox Cnty. Bd. of Educ.*, 158 F.3d 361, 373 (6th Cir. 1998) (hereinafter "*Knox County*").

The majority in this case holds that the school board's "one-year random drug testing requirement was reasonable, particularly in light of Palmer's conviction for misdemeanor marijuana possession." (Maj. Op. at 11-12.) The majority contends that "[g]iven [Plaintiff's] marijuana conviction, the Board's concern that she might report to work under the influence was well-founded," (*id.* at 12), and that the drug testing requirement "served as a reasonable means of ensuring her compliance with the Board's drug-free workplace policy." (*Id.* at 13.)

Although the school board may have had a strong interest in requiring drug testing, as the majority appears to argue, the majority abruptly ends its inquiry on that point, resulting in a truncated analysis at odds with prevailing case law. *See Von Raab*, 489 U.S. at 670-71; *Knox County*, 158 F.3d at 371. Contrary to the majority's apparent view, drug testing of a public school employee, such as Plaintiff, is not *per se* reasonable under the Fourth Amendment any time the school board has an individualized suspicion of the employee's off campus drug use. Instead, a court must balance the public interest in drug testing with a second factor, namely the "employee's privacy rights." *Knox County*, 158 F.3d at 379-80; *see also Chandler v. Miller*, 520 U.S. 305, 314-16 (1997). Without adequately considering the weight of Plaintiff's privacy rights, and therefore being unable to properly weigh this countervailing factor against the public interest, the majority has no legal basis to hold that the drug testing is "reasonable."

To accord appropriate weight to Plaintiff's privacy rights, we must consider: 1) Plaintiff's reasonable expectation of privacy based on the "degree to which the industry in question is regulated," and 2) the intrusiveness of the drug testing scheme. *Knox County*, 158 F.3d at 379-80. Because the record is woefully undeveloped as to these issues, and consequently genuine issues of material fact remain as to the reasonableness of the drug testing at issue, the majority errs in affirming the district court's grant of summary judgment on the basis that the drug testing was reasonable.

First, as to Plaintiff's reasonable expectation of privacy as a school employee, public education is a highly regulated environment, which may diminish a public school employee's reasonable expectation of privacy. *See id.* at 379. But the degree to which Plaintiff's reasonable expectation of privacy may have been diminished on account of her employment is unclear. Most notably, the record contains no evidence of an official drug testing policy apart from one reference in school board policies to the existence of an undescribed "testing program." Additionally, the policies contained in the record regulate only, as the majority concedes, "substance abuse among school employees while on duty." (Maj. Op. at 12.) Nothing in the policies contained in the record purport to restrict an employee's, such as Palmer's, off campus marijuana use so long as it remains unconnected with the workplace. (*See id.* (quoting school board policies, which apply: "while on duty, on school property, or at a school related activity/event").)

The record is likewise silent regarding the extent to which other similarly situated employees are or have been subjected to drug testing. The record contains no discernible evidence that the school board provided notice to employees that its substance abuse policies applied to private

-18-

activities unconnected with the workplace. Because the school board relied on Plaintiff's alleged marijuana use outside of the workplace to impose the drug testing requirement on Plaintiff, inquiry into these undeveloped areas is necessary for the proper deposition of this claim.

Second, the record is unilluminating regarding the issue of the intrusiveness of the drug testing; the only information about the drug testing procedures is contained in a diagnostic document that appears to report the results of Plaintiff's drug test.[3] The report is bare and unexplained; it contains the names of eight substances tested for; the results for each substance, with the positive test results indicating verification by "repeat analysis" without additional explanation; and the name of the health center and diagnostic company, Quest Diagnostics, Inc., which appears to be a "DHHS Certificated Laboratory." The report also makes reference to "GC/MS Reporting Levels," with attendant levels, but neither the record nor the parties explain the significance of this information.

The information contained in the unexplained report is insufficient to properly consider the intrusiveness of the drug testing. *See id.* at 380-83, 385. To properly evaluate Plaintiff's claim, further inquiry is necessary into, among other things: 1) the specific procedures and protocols of the drug testing, including the physical intrusiveness of the testing itself, the employee's physical privacy during the testing, and the qualifications of those performing the testing; 2) the need for the specific tests performed; 3) the minimum threshold to trigger a positive test result; 4) the reliability of the test results, including the existence and nature of any independent review or protections against false

---

[3]Notably, this document was not proffered by Defendants for the purpose of showing the reasonableness of the drug test. Defendants offered the report only as evidence of the reason for Plaintiff's termination. (Defs.' Br. at 14-15.)

-19-

positives caused by diagnostic errors or circumstances unrelated to illegal drug use, such as prescribed medication; and 5) the degree to which the test results are maintained in confidence and stored in a secure manner, including whether the results are available to law enforcement or used for law enforcement purposes. *Id.*; *see also Nat'l Fed'n of Fed. Employees-IAM v. Vilsack*, – F. Supp. 3d –, 2011 WL 1296859, at *9-11 (D.C. Cir. Apr. 6, 2011). Without more evidence in the record as to the nature and extent of the intrusiveness of the drug testing at issue, summary judgment was not appropriate on the basis that the drug test was reasonable. *See Knox County*, 158 F.3d at 386 (remanding challenge to public employee alcohol testing because the record was insufficient).

Accordingly, we should vacate the grant of summary judgment for Defendants on this claim, and remand for further factual development and legal briefing prior to the district court considering a motion for summary judgment. *See, e.g.*, *Penny v. Kennedy*, 915 F.2d 1065, 1068 (6th Cir. 1990) (en banc) (remanding Fourth Amendment challenge to city's drug testing policy, opining: "we are uncertain from the record here whether the . . . fourth amendment aspects of the actual carrying out of the search . . . have been adequately addressed").

## II. Title VII Claim

Plaintiff claims quid pro quo sexual harassment in violation of Title VII. The majority sets forth the applicable legal standard, and it need not be repeated here. For purposes of this claim, Plaintiff alleges that: 1) her rejection of sexual advances by Cacioppo caused her termination; 2) Hooper aided the sexual harassment by Cacioppo; and 3) that the school board failed to protect Plaintiff.

In affirming the grant of summary judgment for Defendants, the majority concludes that Plaintiff "has not presented any evidence suggesting a causal relationship between the alleged sexual harassment and her discharge months later." (Maj. Op. at 14.) The majority reasons that Plaintiff's notice of termination "makes perfectly clear that her discharge was premised upon numerous infractions . . . ." (*Id.* at 14-15.) The majority then rejects Plaintiff's argument that Hooper and Cacioppo acted together as without evidentiary support. (*Id.*)

Although glossed over by the majority, a review of the record makes clear that the district court erred in granting summary judgment on Plaintiff's Title VII claim because Defendants plainly failed to meet their initial burden in moving for summary judgment, and there remain genuine issues of material fact that preclude a grant of summary judgment.

Defendants moved for summary judgment on the sole basis that Plaintiff "neither asserts nor proves" the element of causation, for which Defendants contended that "no evidence" existed. Defendants asserted that Plaintiff was terminated for failing her drug test and otherwise violating the Last Chance Agreement. Although Defendants may satisfy their initial burden under Rule 56 by pointing to the absence of evidentiary support for Palmer's claim, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), Defendants' failed to meet their initial burden in this case, as explained below, because Defendants failed to address, or even acknowledge the existence of, evidence tending to support Palmer's claim. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything.") (internal quotations and citation omitted).

Defendants offered only the following record evidence in support of their motion below: 1) an unexplained, general citation to 52 pages of exhibits; 2) citation to deposition testimony wherein Plaintiff admits to marijuana use during the period in which she was employed, although not while on the job (Defendants did not explain the relevance of this cited testimony to the Title VII claim); 3) citation to deposition testimony wherein Plaintiff purports to admit that she was fired because of her positive drug test (Defendants did not explain the relevance of Plaintiff's subjective belief about her termination to the Title VII claim); and 4) citation to deposition testimony wherein Plaintiff admits her inability to produce evidence that Hooper knew about the allegations of sexual harassment.

Neither this record evidence nor Defendants' arguments below or on appeal adequately address Plaintiff's allegations against each specific Defendant. With regard to Cacioppo, Defendants did not directly address Plaintiff's claim that after she rejected the "unwelcome[d] sexual advances, Cacioppo repeatedly denigrated her work performance, harassed and beleaguered her, and such actions ultimately le[d] to and [were] the proximate cause of Palmer being discharged from her employment of 13 years." (Am. Compl. ¶ 2; *see also Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 677 (6th Cir. 2008) (holding that an employer's decision to terminate the plaintiff based on information supplied by a supervisor satisfies the causation requirement); *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 946 (6th Cir. 1992) (holding that the "determinative question is whether [the plaintiff] has submitted evidence that [a supervisor's] . . . animus was a cause of the termination.").)

Hooper's liability was likewise all but ignored by Defendants. Defendants' argument to the district court consisted only of the following sentence: "[i]t is altogether unclear why Hooper is a party as there is no evidence that Hooper even knew of Palmer's allegations against Cacioppo." (Mot. at 15 (citing to unexplained deposition testimony).) Defendants' assertion, however, ignored Plaintiff's deposition testimony that she believes Hooper heard about the allegations from another administrator, and that Plaintiff claims to have herself informed Hathorn of the allegations. Moreover, any lack of actual knowledge fails to negate Plaintiff's allegation that Hooper "intentionally, *recklessly*, or *negligently* aided" in the sexual harassment. (Am. Compl. ¶ 3 (emphasis added).)

Finally, in moving for summary judgment, Defendants made no reference at all to the issue of the liability of the school board, or otherwise addressed the allegations against the school board contained in the Amended Complaint. (*See id.* ¶¶ 4-6.)

Accordingly, in the face of unmet allegations that appear to have record support, and the numerous unresolved material factual disputes that appear to remain, we should reverse the grant of summary judgment on this claim.

**III.    Conclusion**

For these reasons, I respectfully dissent from the majority's disposition of Plaintiff's claims arising under 42 U.S.C. § 1983, and Title VII. Because it is unnecessary to address the viability of Plaintiff's FMLA claim, for the reasons set forth in footnote 1, *supra*, I decline to join the majority opinion's discussion of the FMLA issue.