NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0181n.06

Case No. 17-3737

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 09, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ROBERT C. STEIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ATLAS INDUSTRIES, INC., | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, BATCHELDER, and THAPAR, Circuit Judges.

**THAPAR, Circuit Judge.** A few years back, Robert Stein had a run of bad fortune. Stein's son, who suffers from a rare neurological condition, nearly died. Not a month later, Stein tore his meniscus at work. That injury required surgery, so Stein took medical leave to have an operation and recover.

Things got complicated during Stein's leave. About ten weeks into his recovery, Stein went in for a checkup. There, Stein says that he was told that he would not be released to work until August 10. However, Stein concedes that he was given a release slip from the doctor's office that released him to work as of July 20, but to perform only office work until August 10. Stein gave that release slip to Atlas's workers' compensation office. After that visit, the doctor's office notified Stein's employer—Atlas Industries—that Stein could return to work with light-

duty restrictions in just two days. The upshot? Atlas expected Stein to return to work the following Monday, but Stein thought he was on leave for several more weeks.

On Monday, Stein neither showed up for work nor called in. Tuesday and Wednesday were no different—Atlas heard nothing from Stein. So on Thursday, Atlas fired him. Company policy, his bosses said: Employees who missed three workdays without notification were subject to automatic termination. No exceptions.

Stein sued, claiming that Atlas violated the Family and Medical Leave Act and the Employee Retirement Income Security Act. The district court granted Atlas summary judgment, and Stein now appeals. We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to Stein and drawing all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

I.

Stein's first set of claims arises under the Family and Medical Leave Act. The FMLA guarantees eligible employees up to twelve weeks of unpaid, job-protected leave to recover from a serious medical condition. 29 U.S.C. § 2612. Stein claims that by firing him while he was on leave after his knee surgery, Atlas interfered with the exercise of his FMLA rights and retaliated against him for exercising them. *See id.* § 2615.

A.

To prevail on his FMLA interference claim, Stein must show that: (1) he was an FMLA-eligible employee, (2) Atlas is a covered employer, (3) he was entitled to leave under the FMLA, (4) he gave Atlas notice of his intent to take leave, and (5) Atlas denied him FMLA benefits to which he was entitled. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

Only the fifth element is in dispute: Stein says that Atlas denied him FMLA benefits when it fired him for failing to show up or call in after he was released for light-duty work.

The FMLA and the regulations say otherwise. The FMLA provides that an employee who has a serious health condition can take up to twelve weeks of leave per year. *See* 29 U.S.C. § 2612(a)(1)(D). But the FMLA does not grant an *unconditional* right to leave. To qualify, an employee must "comply with [his] employer's usual and customary notice and procedural requirements," including internal call-in policies. 29 C.F.R. § 825.302(d); *see Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013). And where an employee fails to do so, the employer is within its rights to terminate him—even if the days he failed to call in were otherwise FMLA-protected. *See Srouder*, 725 F.3d at 615 (approving termination where FMLA-eligible employee failed to comply with internal call-in requirement).

Here, Atlas's policy required employees on medical leave to either return to work or call in once their doctor released them with light-duty restrictions. And the company's employee handbook provided that "any associate who is absent three (3) consecutive days without permission or without calling in [would] be automatically discharged." R. 62-3, Pg. ID 843. So, when Stein failed to report for work or call in for three consecutive days after his release, Atlas was within its rights to terminate him. *See Cundiff v. Lenawee Stamping Corp.*, 597 F. App'x 299, 300–01 (6th Cir. 2015) (holding that employer was "justified in terminating [employee] for his failure to follow the call-in requirements of [its] attendance policy" (second alteration in original) (quoting *Srouder*, 725 F.3d at 615)). Since Stein failed to comply with Atlas's notice requirements, the FMLA was no obstacle to Atlas terminating him.

Stein's response is twofold. He first claims that Atlas's policies conflict with the FMLA's light-duty regulations. Stein is correct that an employer may not require that an

employee return to work once cleared for light duty if the employee has unexhausted FMLA leave. *See* 29 C.F.R. § 825.702(d)(2) (providing that "[i]f the employer offers [a light-duty] position, the employee is permitted but not required to accept the position"); *see also id.* § 825.207(e) (employee "may decline the employer's offer of a light duty job"); *id.* § 825.220(d) (employee's acceptance of light-duty assignment must be "voluntary and uncoerced"). The FMLA does not, however, prohibit employers from requiring that employees call in and provide notice about their intent to continue FMLA leave following their release to light-duty work. *See id.* § 825.302(d) (employer may enforce "usual and customary notice and procedural requirements"); *Allen v. Butler Cty. Comm'rs*, 331 F. App'x 389, 394 (6th Cir. 2009) ("[N]othing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans." (quoting *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 972 (7th Cir. 2000))). That distinction is crucial here. Had Stein contacted Atlas to say that he was using his remaining two weeks of FMLA leave and the company subsequently fired him under the attendance policy, Stein would have a claim. But that is not what happened. Atlas's policy required Stein either to return to work *or* call in and report his intentions, and Stein did neither. So the light-duty regulations do not protect him.

Stein's next argument also relies on the FMLA regulations, under which an employer cannot fire an employee who fails to provide notice due to "unusual circumstances." 29 C.F.R. § 825.302(d). Stein claims that he had no idea that he was released for light-duty work, and that Atlas's handbook did not require him to call in.

Stein's unusual-circumstances argument fails for two interrelated reasons. First, Stein's own confusion about his return-to-work date does not constitute an unusual circumstance.

To see why, consider the regulations' sole example of the sort of "unusual circumstance" that excuses an employee's failure to provide notice: an employee who *tries* to call in sick—but reaches only his employer's already-full voicemail system. *Id*. Here, by contrast, Stein never attempted to call in because he claims that he was unaware that he had been cleared for light-duty work. Apparently, Stein's doctor told him one thing but gave Stein a written return-to-work slip that said something else. The form by its terms released Stein to return to office work, but evidently, he did not understand it. This mistake does not permit Stein to take cover under the unusual-circumstances exception. *See Srouder*, 725 F.3d at 615 (no unusual circumstances where employee claimed to be under the mistaken impression that his employer had waived its notice requirements). People make mistakes—there is nothing unusual about that. And for Stein, this was indeed an unfortunate misunderstanding. But it is not one that federal law can fix.

Because Stein had been cleared to return to work on light duty, it was not unusual for Atlas to expect Stein to call in pursuant to Atlas's policy. Atlas's employee handbook provides that an employee's sick leave "is for a specific period of time based on medical verification by the associate's physician, indicating that the associate is physically unable to perform work due to illness or injury." R. 68-1, Pg. ID 2176; R. 62-3, Pg. ID 857–58. Thus, once Stein's doctor verified that he was physically able to work, Stein had to call in. The fact that he ultimately could have turned down a light-duty assignment does not change this requirement. Indeed, the handbook is unequivocal; it provides that "it is [the employee's] responsibility to be on the job and keep [Atlas] advised when you are unable to work, *whatever the reason*." R. 68-1, Pg. ID 2176–77 (emphasis added). And that handbook was also clear that Atlas would terminate any employee who failed to come to work or provide notice for three consecutive workdays. These

provisions were sufficient to make Stein aware that if he failed to let Atlas know his plans, he could be fired.[1]

Thus, because Stein failed to comply with Atlas's notice requirements and the unusual-circumstances exception does not apply, his interference claim fails.

B.

Stein next claims that Atlas retaliated against him for exercising his FMLA rights. When evaluating FMLA retaliation claims in the absence of direct evidence, courts employ the *McDonnell Douglas* burden-shifting framework. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the burden is initially on Stein to show that (1) he exercised a protected right under the FMLA, (2) Atlas knew he exercised that right, (3) he suffered an adverse employment action, and (4) a causal connection existed between his protected activity and the adverse employment action. *Seeger*, 681 F.3d at 283. The parties dispute only the causation element on appeal. So, to make his prima facie case, Stein must point to evidence that "enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Id.* (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

Stein admits that his only evidence of causation is temporal proximity. After Stein notified Atlas that he intended to take FMLA leave, about ten weeks passed before the company fired him. *See Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 452 (6th Cir. 2017) (explaining that proximity in this context reflects "the 'time after an employer learns of a

---

[1] Stein also points to a handbook provision indicating that he would not be allowed to return to work until he completed a drug screen and work-fitness exam, which Atlas never scheduled. But this is not the sort of irregularity that triggers the unusual-circumstances exception, which applies in situations where the employee's failure to provide notice is somehow "justified." *Srouder*, 725 F.3d at 615. Stein cannot claim that this provision "justified" his failure to provide notice, since—on Stein's own version of the facts—he was simply unaware that he had been released to work.

protected activity,' not the time after the plaintiff's FMLA leave expires" (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008))). Without more, however, temporal proximity only suffices to make a plaintiff's prima facie case where the adverse employment action occurs "very close in time after an employer learns of a protected activity." *Seeger*, 681 F.3d at 284 (quoting *Mickey*, 516 F.3d at 525); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (noting approvingly that "the cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'" (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001))).

How close is "very close"? Stein has not pointed to any binding case suggesting that a period longer than eight weeks will suffice. And our cases indicate that the line should be drawn shy of the ten-week mark. *Compare Seeger*, 681 F.3d at 283–84 (eight-week gap sufficient to establish prima facie case), *with Bush*, 683 F. App'x at 452 (affirming dismissal where employee was terminated ten weeks after notice of FMLA leave because he failed to "supplement his claim with 'other evidence of retaliatory conduct to establish causality'" (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010))); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that three-month time lapse between plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to work established a causal connection when paired with *other evidence* of retaliatory motive). Thus, since Stein was terminated ten weeks after he began FMLA leave and cannot point to *any* additional evidence of retaliation, his evidence of temporal proximity is not enough. *See Mickey*, 516 F.3d at 529 (Batchelder, J., concurring) (explaining that temporal proximity would be enough where the "employer's learning of the protected activity is so closely followed by the employer's taking of

an adverse action that the two are virtually contemporaneous"). The district court was thus correct to grant Atlas summary judgment on Stein's FMLA retaliation claim.

II.

Stein's other set of claims arise under the Employee Retirement Income Security Act. Stein's son Jordan suffers from a debilitating neurological condition. Jordan had to be hospitalized for four months in 2013, which turned out to be very expensive. Stein now argues that his firing was in fact motivated, at least in part, by Atlas's desire to rid itself of Jordan's large medical bills. And since Atlas's employee health-care plan covered Jordan, Stein claims that Atlas is liable for both retaliation and interference under ERISA. *See* 29 U.S.C. § 1140. To prevail on his interference claim, Stein must show that Atlas fired him in order to interfere with his ability to receive future benefits for Jordan under Atlas's employee health-care plan. *Smith v. Hinkle Mfg., Inc.*, 36 F. App'x 825, 828 (6th Cir. 2002). And to prevail on his retaliation claim, he must prove that his past claims under that plan were causally linked to Atlas's decision to fire him. *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 628 (6th Cir. 2008). Because Stein relies upon the same set of facts to support these two claims, we address them together.

We again employ the *McDonnell Douglas* framework. *Id.*; *Smith*, 36 F. App'x at 828. Initially, Stein bears the burden of making out his prima facie case of interference and retaliation. *Smith*, 36 F. App'x at 828. If he succeeds, the burden shifts to Atlas to articulate a nondiscriminatory reason for his firing. *Id.* And if Atlas does so, Stein must show that Atlas's proffered reason was in fact pretext for discrimination. *See id.*

*Prima facie stage.* Stein produced evidence sufficient to make a prima facie case of both retaliation and interference. Atlas maintains a self-insured employee health-care plan with stop-loss coverage. That means Atlas pays employees' medical claims as they arise—rather than a

single fixed premium to an insurance carrier—with a built-in ceiling on how much the company will have to spend on any individual employee. Atlas appears to have spent over $500,000 on Jordan's medical expenses the year before Atlas fired Stein (about half of which was later reimbursed by its stop-loss insurer).

Stein points to evidence suggesting that Atlas was concerned about high health-care costs, and Jordan's in particular. Both before and after Stein's firing, Atlas publicly expressed its worry about "skyrocket[ing]" health-care costs in a series of employee notices. R. 66-11, Pg. ID 1927–32. The company also made significant changes to its health-insurance offerings and stop-loss coverage. While Jordan was hospitalized, Stein says that Atlas's vice-president of operations twice told him that he hoped Jordan would be released soon—because his care was getting expensive for the company. And, around the same time, Atlas's human resources director purportedly told another employee that "astronomical payouts" were causing Atlas's health-insurance costs to go up—and showed the employee a document listing nearly one million dollars in Jordan's medical expenses.[2] R. 72-1, Pg. ID 2487. This evidence is sufficient to make Stein's prima facie case. *See Smith*, 36 F. App'x at 827–30 (plaintiff made prima facie case based partially on fact that supervisor told employee that "families like hers were the cause of [employer's] rising insurance costs and were a drain on the company" (internal quotation marks omitted)); *see also Trujillo v. PacifiCorp*, 524 F.3d 1149, 1151, 1155–58 (10th Cir. 2008) (plaintiff made prima facie case partially based on one executive's comment that "90% of all healthcare costs were incurred [by] only 10% of the employees" and evidence showing that the

---

[2] Atlas suggests, in passing, that these statements are hearsay. But Atlas has not properly developed that argument, so it is forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). In any event, because these statements were allegedly made by Atlas's director of human resources concerning a matter within the scope of her employment, they would plainly fall under Federal Rule of Evidence 801(d)(2)(D) as being outside the definition of hearsay. *See* Fed. R. Evid. 80l(d)(2)(D) ("A statement that meets the following conditions is not hearsay: . . . [t]he statement is offered against an opposing party and: . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . .").

employees' son was one of only two covered persons with a terminal illness); *Dewitt v. Proctor Hosp.*, 517 F.3d 944, 947–49 (7th Cir. 2008) (plaintiff made prima facie case of discrimination where supervisors repeatedly inquired about employee's husband's cancer-treatment costs).

In response, Atlas argues that Stein's supervisor neither knew the precise amounts of Jordan's medical costs nor had reason to try and cut those costs himself. But that supervisor admitted that he knew about Jordan's condition, and Stein points to circumstantial evidence suggesting that he would have known Stein was a high-cost employee and had reason to do something about it. Stein says that Jordan's high health-care costs and their effect on Atlas's bottom line were common knowledge amongst Atlas employees, pointing to an alleged statement from a coworker that "since [Jordan] was in the hospital, we're not going to get a raise." R. 60-1, Pg. ID 372–75, 409–10. In addition, Stein's direct supervisor was not the only Atlas employee involved in Stein's firing. Both Atlas's vice-president of operations and its human resources director played a role. For instance, the day before Stein was terminated, Stein's supervisor discussed Stein's three days of absences with Atlas's human resources director. The human resources director confirmed that Stein was released to work as of July 20. And immediately after Stein's supervisor fired him, Stein spoke with Atlas's vice-president of operations and asked him to reconsider the termination decision. The vice-president of operations refused to reconsider that decision. And Stein alleges that both the human resources director and the vice-president of operations made comments indicating their displeasure with Jordan's medical costs. So Stein's supervisor's purported ignorance about the details of Jordan's claims does not undermine his prima facie showing. *See Trujillo*, 524 F.3d at 1156 ("While PacifiCorp seems to suggest the Trujillos needed direct evidence that the company was monitoring the individual costs being incurred by the Trujillos' son for medical treatment, they

only needed to present enough evidence for a reasonable inference of that premise to arise." (internal quotation marks and citation omitted)).

Atlas also argues that the temporal proximity between Jordan's uptick in medical expenses and Stein's firing—about seven months—is too long to support Stein's prima facie case. But the case Atlas cites for this proposition holds only that "there is a consensus that proximity *alone* generally will not suffice where the adverse action occurs more than a few months . . . after the protected conduct." *Hamilton*, 522 F.3d at 629 (emphasis added). And as discussed, Stein has "provide[d] *additional evidence* of causation" beyond temporal proximity. *Id.* at 629–30 (emphasis added). What is more, the evidence suggests that Atlas continued to process and pay claims for Jordan's care after his release from the hospital, and that Atlas's decisionmakers knew Jordan's condition to be permanent and deteriorating. So even though seven months had passed since Jordan's most recent hospitalization, a reasonable juror could infer that Atlas's decision-makers were motivated by the prospect of future medical costs.

*Legitimate business reason and pretext.* Since Stein has made his prima facie case of retaliation and interference, the burden shifts to Atlas to provide a non-discriminatory reason for his firing. It has: His failure to return to work or call in after his doctor released him for light duty. Thus it is Stein's turn once more. Stein "need not show that the employer's *sole* purpose was to interfere with [his] entitlement to benefits" or to retaliate, but instead that a reasonable jury could find that unlawful considerations were a "*motivating factor*" in its actions. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997) (ellipses omitted and emphasis added) (quoting *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411, 1413 (6th Cir. 1996)); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). Plaintiffs usually demonstrate pretext by "showing that the employer's stated reason for the adverse employment action either (1) has no basis in

fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008).

Stein's evidence is sufficient to establish pretext at the summary-judgment stage. As discussed above, Atlas says it terminated Stein for one reason: his failure to report or call in for three consecutive days after his doctor released him for light-duty work. But while this rationale does not run afoul of the FMLA, a reasonable juror could find that it masks Atlas's intent to violate Stein's rights under ERISA.[3] Stein had worked at Atlas for nearly twenty years, had won at least one perfect attendance award, and had worked overtime when asked. He seems to have been a satisfactory employee. But as the three days after his release to light duty rolled by, Atlas reached out only to Stein's doctor and Atlas's third-party administrator for workers' compensation claims—just to double-check that Stein had really been released. And even though Atlas's employee handbook indicates that Stein had to "complete a return to work fitness exam and drug screen prior to returning to work" that "[would] be scheduled by the Human Resource department," R. 62-3, Pg. ID 858, the company did not schedule Stein's drug screen before it fired him. *See DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 394 (6th Cir. 2005) ("[A]n employer's failure to follow a policy that is related to termination or demotion can constitute relevant evidence of pretext." (citing *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 421–22 (6th Cir. 1999))). Although Atlas was not *required* to reach out to Stein, for reasons set out in the FMLA-interference discussion above, the fact that it did not do so could still raise a juror's suspicions about Atlas's motives. And while Atlas claims that this was all just standard practice—pointing to a list of fifty-five employees that the company terminated under its no-call, no-show policy in the past twenty or so years—Atlas's list only

---

[3] Atlas's reliance on its notice policy does not amount to an "unusual circumstance" under the FMLA's regulations, for the reasons explained above. But that question is different from the inquiry guiding resolution of Stein's ERISA claims: whether reliance on the notice policy merely shielded Atlas's unlawful motives.

includes names and dates. It does not indicate whether these fifty-five terminations are otherwise similar to Stein's in the relevant respects. And Stein, for his part, has pointed to evidence suggesting that his superiors selectively enforced the absenteeism policy by calling *some* employees to "ask what's up" when they failed to show up for work, but not others.

In combination with Atlas's documented concerns about skyrocketing health-care costs and its managers' purported comments about Jordan's claims, this evidence permits an inference that Atlas was motivated at least in part by its desire to be free from a medical-cost albatross. At trial, Stein could paint a picture suggesting that Atlas, concerned about Jordan's medical expenses, simply bided its time and waited—Gotcha! style—for Stein to make a mistake. And then, when he did, the company jumped at the chance to cut him loose. This is a story that, in view of the evidence, a reasonable jury could believe. So Stein should have the chance to tell it. The district court thus erred in granting Atlas summary judgment on Stein's ERISA claims.

*\*\*\**

We **AFFIRM** the district court's dismissal of Stein's FMLA interference and retaliation claims, **REVERSE** its dismissal of his ERISA claims, and **REMAND** for further proceedings consistent with this opinion.

**ALICE M. BATCHELDER, Circuit Judge, concurring in part and dissenting in part.** Because I would affirm the district court in its entirety, I must respectfully dissent from Section II of the majority opinion, deciding the ERISA claim. I concur in the remainder.

As for that ERISA claim, the district court based its decision on an undisputed fact and an established legal principle. The fact: Mark Toeppe, Stein's direct supervisor, made the decision to fire Stein. The legal principle: for a plaintiff to prove that an employer discharged him in violation of ERISA § 510, he must show that the decision maker "acted with the specific intent to violate ERISA." *Stein v. Atlas Indus., Inc.*, No. 3:15-cv-00112, 2017 WL 2720339, at *14 (N.D. Ohio June 23, 2017) (citing cases). From this, the district court explained that the plaintiff, Stein, had to show that the decision maker, Toeppe, must have known the details of Stein's healthcare claims for those claims to have motivated the termination decision. After thorough review of Stein's proffered evidence, the district court held that "the record fails to show that it is more likely than not that Mr. Toeppe . . . knew about [Stein]'s ERISA-protected activities— namely, the costs of [his son] Jordan's medical claims." *Id.* at *14. Consequently, the court held that Stein could not prove a causal connection sufficient to make out a *prima facie* case.

Based on my careful review of the record, I likewise find that Stein has produced no evidence from which a juror could reasonably find that Toeppe knew or believed that Jordan's specific medical costs were detrimental to Atlas, or that any such perception motivated Stein's firing in any way. Stein argues, and the majority appears to agree, that genuine questions exist as to whether Toeppe knew about the medical claims, and argues that Toeppe could have or should have drawn that inference from other things that he could have or should have known. But neither Stein nor the majority points to any specific record evidence that would prove that Toeppe necessarily knew of Jordan's particular medical costs, much less that Toeppe had the

specific intent to violate ERISA that is necessary under the standard. Stein also argues, and again the majority appears to agree, that genuine questions exist as to whether Toeppe was the ultimate decision maker, arguing that Clark and Miller were also involved. But again, neither Stein nor the majority offers specific evidence to support this; they instead just pile inference on inference. As I see it, these questions, such as they are, do not make Stein's *prima facie* case.

Even if Stein could prove his *prima facie* case, Atlas provided evidence that Toeppe fired Stein pursuant to Atlas's established employment policy, under which Stein's failure to return to work or call in for three consecutive days triggered an automatic discharge. This is a legitimate, non-discriminatory reason and the issue becomes a question of pretext. Ordinarily, a plaintiff "demonstrate[s] pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). We have, however, also held, albeit less frequently, that a plaintiff may "demonstrate pretext[] by offering evidence that challenges the reasonableness of the employer's decision, to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Rachells v. Cingular Wireless Employee Servs.*, 732 F.3d 652, 668 (6th Cir. 2013). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (editorial marks omitted).

In framing its pretext analysis, the majority relies on a 1997 opinion in which we asserted the proof-of-pretext standard as requiring the plaintiff to prove merely that "the interference was

a motivating factor in the employer's actions or prove that employer's proffered reason is unworthy of credence." *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). My impression of our case law is that the cases cited in the foregoing paragraph have moved us on from this ambiguous, 20-year-old standard and that proof of pretext currently requires more than a mere possible, partial motivation.

Regardless of how we frame the test, the majority essentially concludes that Stein's showing of pretext comes from "evidence that challenges the reasonableness of [Toeppe]'s decision," such that the otherwise legitimate, non-discriminatory reason for firing Stein was not Toeppe's "actual motivation." *See Rachells*, 732 F.3d at 668. Specifically, the majority asserts that a jury could question the reasonableness of Toeppe's decision to fire Stein, and hence his *true* underlying motivation, because Stein was a "satisfactory employee" of 20 years and Toeppe did not attempt to investigate a possible mistake by contacting Stein before he fired him.

As support for this assertion, the majority invites the jury to consider irrelevant factors and reverses the burden of proof. First, the majority says that even though Toeppe was not *required* to reach out to Stein, his failure to do so would justify a juror's suspicions about his motive. I do not agree. If Toeppe's unexplained and unexamined failure to reach out to Stein with an inquiry or a warning, *when he was not required to do so*, justifies a juror's finding of a bad motive, then anything could justify such a finding and this is no standard at all. Suppose Toeppe had called Stein only once, rather than twice or multiple times, or had called repeatedly but left no messages, or had called but sent no letter, or had thought someone else at Atlas had called but did not pursue it to be certain. What should be the standard for deciding when a defendant's failure to undertake a gratuitous act shows an ill motive? Suppose Toeppe were shown to be a grinch who steals Christmas gifts from orphans. That certainly would lead to

suspicions about Toeppe's motives, but in a court of law it is irrelevant to whether Toeppe fired Stein with the intent to violate ERISA, just as Toeppe's failure to go beyond his required duty is irrelevant to that intent, at least for purposes of a juror's decision.

The majority also faults Atlas for failing to prove that the firing was not pretextual, asserting that, although Atlas claimed that this firing was standard practice and provided a list of 55 employees it had fired under this policy, Atlas did not provide proof that the 55 firings were sufficiently similar to Stein's in all relevant respects. This not only adds an additional—fourth— step to the established three-step burden shifting framework, it directly contradicts our established law, which holds that the plaintiff "retains the ultimate burden" of producing sufficient evidence from which the jury could reasonably reject the defendant's legitimate, non-discriminatory reason and infer pretext. *Johnson*, 319 F.3d at 866.

All in all, I believe the majority has taken an improper approach to evaluating pretext and sets a bad, new precedent. Both "factors" are improper considerations for the jury and the second appears to reverse the burden of proof from requiring the plaintiff to prove pretext to now requiring the defendant to prove that its legitimate, non-discriminatory reason is also not pretextual. I believe that we cannot and should not change our established pretext standard.

Finally, I will mention that I disagree with the majority's footnote 2, in which it says that Atlas forfeited its argument that certain of Stein's proffered statements are actually inadmissible hearsay in violation of Federal Rules of Evidence 801 and 802. The majority says that forfeiture is warranted because "Atlas has not properly developed that argument," which leads to questions of what argument is necessary or what development would be sufficient. When Stein introduced those statements in the district court, Atlas objected on the basis that the statements were hearsay in violation of Rules 801 and 802. That was a sufficiently developed argument in the trial court

and I fail to see what further argument need be developed here—the statements are either hearsay or not. Moreover, given that this is the *appellee's* assertion and we may affirm on any basis supported by the record, the invocation of forfeiture is oddly out of place in this context.

For all of these reasons, I respectfully dissent from the majority's decision as to the ERISA claim and would instead affirm the judgment of the district court in its entirety.